UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GREENUP ET AL, | Case No.  4:19-cv-00243-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| MORRIS ET AL, | |
| Defendant. | |

## I. INTRODUCTION

This case revolves around the death of minor Justice Bishop on July 3, 2017. Dkt. 1. Plaintiffs Danielle Greenup and Andrew and Darce Bishop allege a federal claim under 42 U.S. § 1983, and two claims under Idaho state law: a wrongful death claim, and a claim for intentional infliction of emotional distress. *Id.* Currently pending before the Court are Defendant McKenzie Morris's Motion for Summary Judgment[1] (Dkt. 28), and Defendants Russell Barron, Joel Corrington, Elizabeth Fehringer, Christopher Freeburne, Lisa Hettinger, Carol Jeffries, Dave Jeppesen, Elizabeth Loosli, Caprice Miller, Rachel Peace, Brian Plowman, David Taylor, Lyndsey Walls, and Lori Wolff's (hereinafter "State

---

[1] Corey Morris (McKenzie's husband) was initially listed as a defendant in this case but passed away after the commencement of this suit. He is, therefore, dismissed as a defendant in this case. The Court notes Plaintiffs have not moved to replace Corey Morris as a defendant with his estate. *See* Fed. R. Civ. P. 25.

Defendants") Motion for Summary Judgment (Dkt. 30).[2]

The Court held oral argument on August 13, 2021, and took the matter under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in part and DENIES in part Morris's Motion for Summary Judgment, and GRANTS the State Defendants' Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

Plaintiffs Danielle Greenup and Andrew Bishop are the natural parents of minor Justice Bishop, and Plaintiff Darce Bishop is Justice's paternal grandmother. Dkt. 28-1, at 1. Justice suffered throughout her life from Short Bowel Syndrome, a life-threatening condition which required a substantial amount of medical attention and ongoing care, "the absence of which would place the child in grave harm." Dkt. 1, at 6.[3]

In November 2016, the State of Idaho removed Justice from Danielle and Andrew's custody after her doctors expressed concern that her parents had not sought emergency medical attention after noticing Justice had an infection. Dkt. 30-3, at 3. Justice was eventually placed with foster parents—the Morrises. On July 2, 2017, while in the custody of the Morrises, Justice developed a fever and complained of nausea, vomiting, and

---

[2] Defendant Heritage Home Health, LLC, also filed a Motion for Summary Judgment (Dkt. 29). However, as will be explained below, the parties subsequently stipulated to dismiss Heritage Home Health. Accordingly, its Motion for Summary Judgment is DISMISSED as MOOT. In addition, because the parties' stipulation was filed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), the Court need not take any action; the Clerk of the Court will simply dismiss Heritage Home Health and Angela Young as defendants.

[3] For example, if Justice ever exhibited a fever, she was to receive medical attention as soon as possible. Dkt. 50-1, at 8.

diarrhea that appears to have started a few days prior (June 30, 2017). *Id.* Justice's condition deteriorated that day to the point that the Morrises sought urgent hospitalization. Dkt. 1, at 8. Justice was initially hospitalized at Bingham Memorial Hospital in Blackfoot, Idaho. Greenup and Andrew Bishop were turned away from seeing Justice at Bingham Memorial, purportedly by the Morrises. Soon after, Justice was transported by life flight to Primary Children's Hospital in Salt Lake City, Utah, where she passed away on July 3, 2017, from complications related to her Short Bowel Syndrome. *Id.* Greenup and Andrew Bishop were able to see Justice before she passed away.

### B. Procedural Background

On July 1, 2019, Plaintiffs filed their Complaint against the Morris Defendants; the State Defendants; Heritage Home Health, LLC; and Angela Young (a nurse with Heritage Home Health, LLC). Dkt. 1. Following discovery, Morris filed a Motion for Summary Judgment. Dkt. 28. Subsequently, the State Defendants filed a Motion for Summary Judgment. Dkt. 30. The same day, Heritage Home Health and Angela Young filed a Motion for Summary Judgment. Dkt. 29. Prior to the hearing on the motions, however, Plaintiffs agreed to dismiss defendants Angela Young and Heritage Home Health. *See* Dkt. 58. And even though the Court will not definitely rule on Heritage Home Health's Motion for Summary Judgment, its argument regarding causation, contained in its Motion for Summary Judgment (Dkt. 29), were joined by both the State Defendants and Morris. Dkts. 31, 33. Thus, the Court will address the topic in due course.

For reasons discussed in detail below, the Court GRANTS the State Defendants' Motion and GRANTS in PART and DENIES in PART Morris's Motion. Because it grants

Morris's Motion as to the federal claims, the Court also declines to exercise supplemental jurisdiction over the remaining state claims.

### III. LEGAL STANDARD

**I. Summary Judgment standard**

Summary judgment is appropriate where the moving party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Id*. at 322. It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

MEMORANDUM DECISION AND ORDER - 4

The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The Court does not make credibility determinations at this stage of the litigation, as such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). In considering a motion for summary judgment, the Court must also "view[] the facts in the non-moving party's favor[.]" *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017).

However, the Court need not accept allegations by the non-moving party if such allegations are not supported by sufficient evidence. *Anderson*, 477 U.S. at 249. Instead, the nonmoving party "must go beyond the pleadings and by its own evidence and 'set forth specific facts showing that there is a genuine issue for trial.'" *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting the nonmoving party must "identify with particularity the evidence that precludes summary judgment"). "If the evidence is colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (cleaned up).

## IV. ANALYSIS

### A. Defendant Morris's Motion for Summary Judgment (Dkt. 28)

#### 1. *Whether Plaintiff Darce Bishop has standing*

As a threshold matter, Morris asserts Darce Bishop, Justice's paternal grandmother, does not having standing to pursue claims against any defendant in this matter. Dkt. 28, at 12–14. This is so, she contends, because Justice's natural parents are still alive, and because

Darce Bishop was not dependent on financial support or services from Justice. *Id.* at 13 (citing Idaho Code § 5-311). Plaintiffs responded to this argument by incorporating their response to the Motion for Summary Judgment filed by the State Defendants (Dkt. 40)—who also argued Darce does not have standing—wherein they concede Darce does not have standing to pursue a wrongful death claim, but assert she, nonetheless, still has her own "independent claim for violations of her substantive due process rights . . . ." Dkt. 40, at 3.

First, the Court agrees that Darce indeed does *not* have standing to bring a wrongful death claim. Idaho Code § 5-311 outlines that only heirs of the deceased, as defined by that statute[4], are allowed to bring a wrongful death claim. Because Darce Bishop has made no claim that she fits this statutory definition, she is not an "heir" as defined in Idaho Code § 5-311. Accordingly, she lacks standing to bring a state law claim for wrongful death.

Similarly, Darce Bishop lacks standing to bring a § 1983 claim. For starters, federal law does not specifically provide for the survival of civil rights actions under § 1983 upon the death of the person whose rights were allegedly violated. *Robertson v. Wegmann*, 436 U.S. 584, 589 (1978). And again, even if there was some type of "survivorship" provision at play here, Darce is not an heir or representative of Justice's and cannot bring claims on her behalf.

In addition, it appears this claim has morphed to some degree. Originally, Darce was bringing a § 1983 claim on behalf of Justice. As noted, however, such is not allowed.

---

[4] Idaho Code § 5-311 defines an heir as (a) a person entitled to succeed to the decedent's property under § 15-1-201; (b) a person who is the decedent's spouse, child, stepchild, or parent; or (c) the putative spouse of the decedent.

Apparently realizing this, Plaintiffs pivot and now argue Darce's *own* constitutional rights were violated because she wasn't free to associate with, or care for, Justice. Dkt. 40, at 4, 8. First, a changed theory this late in the litigation prejudices Defendants. What's more, the rights of grandparents are separate and distinct from the rights of parents. *See Miller v. California*, 355 F.3d 1172 (9th Cir. 2004). Second, Darce has not provided any evidence to suggest the State owed *her* any constitutional duty. Any duty owed was to Justice and/or her parents—but not Darce. Absent a duty owed, Darce cannot articulate a cognizable constitutional right she had that was violated by Defendants' actions under § 1983.

Ultimately, the Court finds Darce Bishop lacks standing to bring any state or federal claims, and, therefore, grants this portion of Morris's Motion (and the joining parties' motions on the same topic). Darce Bishop is DISMISSED as a Plaintiff for lack of standing.

### 2. *Whether Foster parents should be considered state employees*

In her Motion for Summary Judgment, Morris asserts she and Mr. Morris were employees of the Idaho Department of Health and Welfare ("IDHW"). Dkt. 28-1, at 3–11. She asserts that "[i]f the Court agrees [they are] employees of the [IDHW] at all times relevant in Plaintiffs' Complaint, and that they were acting within the course and scope of their employment in the care of Justice Bishop, then Defendants Morris may not be held personally and individually liable." *Id.* at 3–4. This would be so, Morris argues, because she would be immune from liability under Idaho Code § 6-904A. *Id.* at 11–12.

Idaho Code § 6-904A states that:

A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without

reckless, willful, and wanton conduct as defined in section 6-904C, Idaho Code, shall not be liable for any claim which:

> 1. Arises out of the assessment or collection of any tax or fee.

> 2. Arises out of injury to a person or property by a person under supervision, custody or care of a governmental entity or by or to a person who is on probation, or parole, or who is being supervised as part of a court imposed drug court program, or any work-release program, or by or to a person receiving services from a mental health center, hospital or similar facility.

Idaho Code § 6-904C, in turn, provides the following definitions:

> 1. "Gross negligence" is the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act and that failing that duty shows deliberate indifference to the harmful consequences to others.

> 2. "Reckless, willful and wanton conduct" is present only when a person intentionally and knowingly does or fails to do an act creating unreasonable risk of harm to another, and which involves a high degree of probability that such harm will result.

Thus, in Morris's view,[5] in order for her to prevail on summary judgment, the Court must find that she was an IDHW employee. If the Court makes such a finding, it would next turn to whether Morris is immune from liability under § 6-904A, i.e. that she did not act with malice or criminal intent *and* did not act recklessly, willfully, and wantonly.

The threshold inquiry, however, is whether Morris—acting as Justice Bishop's foster parent—qualifies as an IDHW employee.

The Court begins by noting that no Idaho State Court has addressed whether a foster

---

[5] As the Court will explain below, Morris should actually *not* want to be classed as an employee of the State because § 1983 claims cannot be levied against individual persons except in rare circumstances.

parent should be considered an employee of the State of Idaho or the IDHW.

More broadly, however, the Idaho Supreme Court has outlined that, whether a person is an employee of the State is based upon the States' "right to control the time, manner and method of executing the work, as distinguished from the right to require certain definite results." *Idaho Industrial Commission v. Sky Down Diving, LLC.*, 462 P.3d 92, 99 (Idaho 2020). In *Sky Down Diving*, the Idaho Supreme Court referred to a four-factor balancing test it has utilized in the past in determining whether the right to control exists:

> (1) direct evidence of the right to control the employee; (2) the method of payment, including whether the employer withholds taxes; (3) whether the employer or worker furnishes 'major items of equipment;' and (4) whether there is a right to terminate the employment at will and without liability.[6]

*Id.*

As for the first factor, Morris argues that, again, while there is no direct evidence in support of her proposition, the "Idaho Legislature certainly has contemplated this issue" and cites to Idaho Code § 6-904 as evidence of such.[7] Dkt. 21-1, at 5. The Court sees no such evidence in this section supporting Morris's conclusion.

Morris also argues that Idaho Code § 6-902(4) and its definition of who qualifies as an employee supports her position.  That section defines employees as:

> [A]n officer, board member, commissioner, executive, employee, or servant of a governmental entity, including elected or appointed officials, and persons acting

---

[6] Plaintiffs point out that *Sky Down Diving* "specifically relates to considerations under the Idaho Workmen's Compensation Act statutes and case law" and calls into question its applicability in this case. Dkt. 51, at 5. Upon review, the Court sees no reason why the Idaho Supreme Court's "right to control" test should not apply to the case at hand.

[7] Section 6-904A discusses exceptions to government liability. And while there is language in that section denoting a person who is working "under [the] supervision, custody or care of a government entity" is immune from suit, there is nothing in that section defining employees, let alone referencing foster parents.

on behalf of the governmental entity in any official capacity, temporarily or permanently in the service of the governmental entity, whether with or without compensation, but the term employee shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to the governmental entity to which this act applies in the event of a claim.

Idaho Code § 6-902(4). Again, however, Morris reads too much into this definition.

These Idaho Code Sections defining and discussed employees aside, Morris contends that IDHW is charged with the legal custody of a child and with ensuring the child's health and safety. Part of that task includes placement of children in appropriate foster care situations. Dkt. 28-1, at 5–6. Morris points out that IDHW has "numerous regulations which foster parents must comply with and abide by in order to maintain their license." *Id.* at 6. Morris argues that all of these rules and regulations illustrate that their "supervision and care of Justice Bishop was strictly supervised and controlled by the [IDHW]." *Id.* at 7.

Although it is true that IDHW has the responsibility to oversee several factors of a foster child's wellbeing and safety—and to ensure placement of foster children with competent foster parents—these facts do not equate to strict regulation or control of how Morris conducted herself as a parent. In addition, the Court declines to speculate or confirm what was going through the Idaho legislature's mind when it passed certain laws. In this case, the Court takes the same view as the Supreme Court of Washington in *DeWater v. State*:

> The State sets forth certain standards for licensing a foster home and requires general compliance with certain standards, but it does not control the manner and means of operating the home.
> ....

> [T]here is no employee/employer relationship primarily because there is no right to control the daily actions of the foster parent and thus no ability to supervise or interfere with the day-to-day interaction between a foster parent and those working in the foster home. The State could revoke a foster parent's license and remove foster children from the home, but it would have no right to otherwise "control" the actions of the foster parent. A foster parent is therefore not a state employee.

921, 1059 P.2d (Wash. 1996). Indeed, "[i]n the foster care setting it is the foster parent …. [w]ho stands in the parental role, not [the state]." *Sheikh v. Choe*, 128 P.3d 574, 581 (Wash. 2006).

In addition, the Court notes that the weight of the caselaw overall supports a finding that foster parents are *not* employees of the state. *See Becerra v. Gonzales*, 32 Cal. App. 4th 584, 591 (1995) (finding that foster parents, while paid by the state, are not employees "of the state or of any other public entity"); *Mitzner v. State*, 891 P.2d 435, 440 (1995) (same); *Kern v. Steele County*, 322 N.W.2d 187, 189 (1982) (same); *District of Columbia v. Hampton*, 666 A.2d 30, 40 (1995) (same); *Simmons v. Robinson*, 409 S.E.2d 381, 383 (1991) (same); *Nichol v. Stass*, 735 N.E.2d 582, 587 (2000) (same); *Stanley v. State Industries, Inc.*, 630 A.2d 1188 (1993); *I.H. v. County of Lehigh*, 610 F.3d 797 (2010) (same). Accordingly, the Court finds the first factor weighs *against* a finding that Morris was an employee of the State.[8]

The Court also finds that the second *Sky Down Diving* factor, "the method of payment, including whether the employer withholds taxes", weighs against Morris's

---

[8] Morris points the Court to a Connecticut case, *Hunte et al. v. Blumenthal, Attorney General, et al.*, 680 P.2s 1231 (Conn. 1996) in support of its argument. The relevant Connecticut statute at issue in that case, however, was very different from the Idaho statutes at issue here rendering the case inapplicable.

MEMORANDUM DECISION AND ORDER - 11

request. Morris does not mention this factor in her Motion and offers only minimal support in her Reply. Dkt. 52. Without citing authority, Morris argues that the second factor "is used to ferret out whether one is a volunteer or not," and that it supports her position because "they had to disclose the sum paid [to them] on their tax returns for payment of taxes" and the State pays for foster children's "food, supplies, medication, insurance, etc." *Id*. at 2–3. Outside of these claims, however, there is no evidence of the payments made to Morris, and it is undisputed that the State of Idaho does not withhold taxes or other withholdings from the payments to foster parents.[9] Accordingly, this factor also weighs against Morris.

The third *Sky Down Diving* factor is whether the employer or worker furnishes "major items of equipment." Morris devoted a single passing line to this element stating that "while the Morris[es] may have had their own home and furniture, they would not have been able to care for the State's ward if the State did not provide the medical equipment, supplies, and medicine." Dkt. 52, at 3. Neither party delves into what constitutes "major items of equipment." It is undisputed the Morrises provided the house Justice lived in, the car in which she was transported, and all other household items. They also controlled the bulk of Justice's daily routine and activities.[10] Without more, this factor is neutral.

---

[9] The State of Idaho reimburses foster parents "for the cost of caring for each child based on the foster care room and board rate according to that child's age." *See* Frequently Asked Questions, IDAHO DEPARTMENT OF HEALTH AND WELFARE, *https://healthandwelfare.idaho.gov/services-programs/children-families/child-protection-and-foster-care/frequently-asked-questions* (last visited Nov. 18, 2021).

[10] Morris argues there are IDAPA regulations that cover items such as sleeping arrangements, transportation, clothing, and other needs of the foster child. That may be true, but those IDAPA provisions

Lastly, the Court must determine whether there is a right to terminate the employment at will and without liability. Morris sums up her argument on this point by noting that "Plaintiffs cannot reasonably argue that the State could not terminate the Morris' supervisory duties at any time." Dkt. 52, at 3. And while it may be true that IDHW (or the State) could terminate Morris's duties as foster parents, that does not automatically make her an employee.

The Court agrees with Plaintiffs that the "lack of identification of Morris as employees of the IDHW by agreement is a critical flaw" as it relates to this argument. Dkt. 51, at 4. As the Idaho Supreme Court has noted:

> For someone to be employed to perform services in the affairs of another, the alleged employer must expressly or impliedly agree to the creation of that employment relationship. Because of the vicarious liability that a governmental entity can have for the acts of its employees, a person cannot become the employee of a governmental entity without its agreement.

*Athay v. Stacey*, 196 P.3d 325, 334 (Idaho 2008). Morris was never explicitly made an employee of the IDHW. Dkt. 51, at 4–5. This cuts against her argument. Further, none of the other hallmarks of employment are present. For example, there is no indication the State provided insurance for Morris. Or heath care, Or retirement benefits. Indeed, as Plaintiffs observed, the Court should be (and is) hesitant to find an implied employee relationship that could open the door for numerous "unintended consequences."[11] Dkt. 51, at 5.

---

were not in existence during the relevant timeframe. What's more, while true that Morris had to take Justice to various medical or legal appointments, such does not mean she lost overall control of Justice's general schedule.

[11] The Court is not explicitly finding that foster parents could not be considered employees of the state in which they reside. However, in Idaho, the evidence indicates Morris was not an employee of the state.

After a careful analysis of the *Sky Down Diving* factors, the Court finds that the bulk of the factors weigh in favor of finding that Morris *was not* an IDHW employee.

Because the Court finds Morris was not an IDHW employee, it need not analyze whether immunity from liability under Idaho Code § 6-904A is applicable in this case.

Oddly, however, this conclusion actually helps Morris. Morris's entire argument is premised upon the idea that *if* she was an employee of the State of Idaho, she could avail herself of Idaho's immunity statutes. What Morris failed to realize, however, is that because she is *not* an employee of the state, she cannot be held liable in a § 1983 action in the first place.

Absent a lengthy discussion on this topic, it suffices the Court to simply reiterate that "private citizens are not amenable to suit under 42 U.S.C. § 1983 as 'state actors.'" *Rux v. Sarvis*, 32 F.3d 572 (9th Cir. 1994) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). To be sure, there are limited circumstances in which a private citizen can be sued under § 1983 such as when he or she is a "willful participant in joint activity with the State or its agents." *United States v. Price,* 383 U.S. 787, 794 (1966). That said, in this case, Plaintiffs have not presented sufficient evidence to tie Morris to any improper state-action nor have they established she deprived Justice of any constitutionally protected right. Thus, although her argument was misplaced, the Court finds Morris's non-employee status is determinative on Plaintiff's § 1983 claim against her.

In addition to their § 1983 claim against Morris, Plaintiffs assert two state law causes

of action: wrongful death and intentionally infliction of emotional distress.[12] In its discretion, the Court declines to extend its jurisdiction to address these claims. Idaho State Court is a more appropriate forum to adjudicate these remaining matters.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). *See also* 28 U.S.C. § 1367(c) ("The district court may decline to exercise supplemental jurisdiction over a claim [] if— (3) the district court has dismissed all claims over which it has original jurisdiction."). It is appropriate for the Court to "raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). In their Complaint, Plaintiffs asserted that this Court had federal question and supplement jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and § 1367. Dkt. 24, at 3.

After granting summary judgment on Plaintiffs' federal claim against Morris (and, as will be explained below, because it will be granting summary judgment on all of the State Defendants' claims as well), this Court no longer has federal question jurisdiction. In turn, its supplemental jurisdiction over any state law claims dissolves.

"With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing

---

[12] Morris did not substantively argue for summary judgment on these claims. To be fair, Morris did "join" Heritage Health's briefs that address these state claims. Dkt. 33. That said, a single line arguing that "there is no evidence or admissible opinions to show or suggest that any named Defendant breached a duty of care which proximately cause[d]" Justice's death is insufficient to support summary judgment in her favor on these claims.

every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc*., 556 U.S. 635, 639 (2009) (internal citations omitted); *accord Lacey v. Maricopa Cty*., 693 F.3d 896, 940 (9th Cir. 2012). *See also Fichman v. Media Ctr*., 512 F.3d 1157, 1162–63 (9th Cir. 2008) ("Having granted judgment on the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims."); *McCoy v. Kretschmar*, 890 F.2d 420 (9th Cir. 1989) ("The district court did not abuse its discretion in declining to exercise pendent jurisdiction over the state law claims since the federal claims were dismissed by summary judgment."). When state law claims are dismissed for lack of jurisdiction, dismissal should be without prejudice. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) (stating that dismissal after declining supplemental jurisdiction should be without prejudice).

Here, in its discretion, the Court declines to retain jurisdiction over Plaintiffs' remaining state law claims. The best forum for Plaintiffs' wrongful death and intentional infliction of emotional distress claims—including the important questions of breach, causation, and damages—is in Idaho State Court. Therefore, the Court will dismiss Plaintiffs' remaining state law claims without prejudice.

## II. State Defendants' Motion for Summary Judgment (Dkt. 30)

The State Defendants bring a Motion for Summary Judgment arguing Plaintiffs' Complaint is woefully lacking in required detail. *See generally* Dkt. 30. First, the State Defendants argue Darce Bishop has no standing to bring either state or federal claims. As discussed above, the Court finds Darce Bishop indeed does not have standing to bring any claims in this case, which includes claims against the State Defendants. Accordingly, the

Court grants summary judgment in favor of the State Defendants on this portion of their Motion.

The State Defendants bring a slew of arguments in favor of their Motion. They claim that: (1) Plaintiff's claims against the State Defendants in their official capacity fail to state a claim upon which relief can be granted; (2) Plaintiffs lack standing to pursue a claim under § 1983 for prospective relief; (3) Plaintiffs have failed to present evidence of any action taken by any specific state defendant in his or her individual capacity that deprived Plaintiffs of their constitutional rights; (5) Plaintiffs' state law wrongful death claim fails as a matter of law; (6) Darce's IIED claim fails as a matter of law; and (7) Plaintiffs have provided no evidence to support an IIED claim against a single state defendant in his or her individual capacity. Dkt. 30.

In Response, Plaintiffs concede several causes of action are inadequate. Plaintiffs concede that Darce Bishop has no standing to sue under the state law wrongful death claims. Plaintiffs also admit that they were unable to identify policies and practices by the State Defendants that would put Plaintiffs' other child at risk. They agree they have not met the standing requirements and accordingly withdraw their claims against all State Defendants that seek prospective relief.[13] Plaintiffs further admit that Defendants Elizabeth Fehringer, Elizabeth Loosli, and Carole Jeffries should be dismissed from this case. Finally, Plaintiffs agree to dismiss their IIED claims against the State Defendants. Thus,

---

[13] Plaintiffs have clarified that they are only suing state employees in their official capacity for prospective injunctive relief. Therefore, the remainder of Plaintiffs' claims are made against the State Defendants in their individual capacities.

the remaining claims against the State Defendants are Plaintiffs' § 1983 claim for prospective relief, Justice's derivative claim under § 1983, and Plaintiffs' state-law claim for wrongful death.

The State Defendants' Motion is lengthy, extremely detailed, and exhaustive. The Court appreciates the detailed arguments. It is unnecessary, however, to deeply analyze each of the State Defendants' points because Plaintiffs' Complaint does not provide sufficient detail to prove its causes of action and the State Defendants are entitled to qualified immunity.

A plaintiff's complaint must contain at least some factual allegations sufficient to plausibly suggest a defendant's wrongdoing in order to comply with the general rules of pleading contained in Federal Rules of Civil Procedure Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S. Ct. 1937, 1952 (2009). As the State Defendants suggest multiple times in their Motion, Plaintiffs' Complaint and subsequent briefing contain generic allegations with little to no support against the State Defendants—individually or collectively.

To be liable under 42 U.S.C. § 1983 "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). To be liable of deprivation of someone's constitutional right under § 1983, a person must do "an affirmative act, participate[] in another's affirmative act, or omit[] to perform an act which

he is legal required to do . . . ." *Murphy v. Hunt*, 455 U.S. 478, 683 (1982).

In this case, even when construed liberally, Plaintiffs have not put forth any evidence that any of the State Defendants violated Plaintiffs' constitutional rights. For example, Plaintiffs' Complaint states that Rachel Peace and Carol Jeffries have "failed to train and or ensure that an adequate policy was created and followed by Department employees to protect the health of Justice Bishop." *See* Dkt. 1, at ¶ 40. This statement has no supporting evidence and lacks any detail or particularized claims against each defendant. Also, by way of example, Plaintiffs do not allege a single act or omission regarding State Defendant Russell Baron, and only briefly mention him in the Complaint. Other Defendants face similarly vague allegations. Simply put, unsupported and unsubstantiated claims appear repeatedly in Plaintiffs' briefing, and the Court refuses to manufacture arguments for Plaintiffs.[14]

Finally, even assuming arguendo that the Court found there was evidence of improper conduct, the State Defendants are entitled to immunity under the 11th amendment. In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly established federal rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982) (cleaned up). A state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly

---

[14] The situation is similar in regard to Plaintiffs' state law claim for wrongful death against the State Defendants. The Court finds summary judgment is likewise appropriate on that claim as there are no facts to support such an accusation, let alone any material facts in dispute.

MEMORANDUM DECISION AND ORDER - 19

established federal rights. *Id.* True to its dual purposes of protecting state actors who act in good faith, and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 227, (1991).

A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009), *citing Saucier v. Katz,* 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

Plaintiffs in this case have not sufficiently argued that a violation of their constitutional rights has occurred, have not presented any facts to indicate such, or shown that the State Defendants acted with the requisite bad state of mind. Plaintiffs list a string of "decisions" by the State Defendants "which led to Justice's death" (Dkt. 40, at 12–14), but never explain how those actions deprived them of any constitutional right. In like manner, while Plaintiffs vaguely cite to some deposition testimony in their brief, they do not actually lay out any evidence calling into question the State Defendants' arguments that none of them took any independent action specifically targeted at Justice that deprived her (or the plaintiffs) of any constitutional rights.

Plaintiffs' conclusory allegations of deliberate indifference are insufficient to withstand scrutiny. In order to show deliberate indifference, Plaintiffs must make "a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 845 (9th Cir. 2010). "Mere negligence or lack of due care by state officials in the conduct of their duties does not trigger the substantive due process protections of the Fourteenth Amendment and therefore does not state a claim under section 1983." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Thus, in order to raise a genuine issue of material fact—and defeat the State Defendants' Motion for Summary Judgment—Plaintiffs must establish that each specific defendant committed an affirmative act, participated in another's affirmative acts, or failed to perform an act which he or she was legally required to do and that such act or omission actually caused the deprivation of Justice's due process rights. This they have not done.

In fact, State Defendants asked Plaintiffs in very pointed interrogatories what exactly they are alleging each State Defendant did, in their individual capacity, that injured/harmed Plaintiffs in any way. The response was virtually identical across the board:

> Objection. To the extent this interrogatory is overly broad, unduly burdensome and vague, and to the extent it calls for information not in Plaintiffs' possession, Plaintiffs object to the same. Without waiving said objection, Plaintiffs refer to the general statement, their Complaint, their other discovery responses and disclosures herein as well as the disclosures

and discovery responses of other parties. Discovery is ongoing, and this
Defendant has neither had to respond to discovery nor been deposed; this,
Plaintiffs reserve the right to amend this response as discovery progresses.

Dkt. 30-2, at 144. Even in briefing before the Court now, Plaintiffs only generically group

various State Defendants together to support their assertions. *See* Dkt. 40, at 14–17.

Plaintiffs have failed to provide any evidence linking any of these State Defendants,

as individuals, to Justice in any way, aside from the fact that they were employed by the

IDHW at the time of Justice's death. This is not enough to proceed on a claim under a §

1983 against these persons in their individual capacities.

Because Plaintiffs cannot show that State Defendant's violated any clearly

established constitutional rights, qualified immunity applies. *Anderson v. Creighton*, 483

U.S. 635, 646 (1987).

Accordingly, the Court finds that no disputes of material fact remain in this case

and, therefore, summary judgment is appropriate. The State Defendants' Motion for

Summary Judgment is GRANTED.

## V. CONCLUSION

For the above stated reasons, the Court finds that Darce Bishop has no standing to

bring claims against any defendant in this case. Accordingly, the Defendants' collective

motions on this particular issue are GRANTED.

Second, the Court finds Morris is not an employee of the State of Idaho or the

IDHW. Accordingly, the Court GRANTS Morris's Motion as it relates to Plaintiffs' § 1983

claim. The Court also declines to extend its supplemental jurisdiction over the remaining

claims against Morris.

Finally, the Court finds that the State Defendants are correct in asserting that Plaintiffs' complaint against them is inadequate. There are also no disputed facts as to their conduct. There is no indication they had the adequate state of mind to support a § 1983 claim. There are no factors supporting a claim for wrongful death or IIED, either. And finally, the State Defendants are subject to qualified immunity under the Eleventh Amendment. Therefore, Summary Judgment is appropriate in their favor.

## VI. ORDER

THE COURT HEREBY ORDERS:

1.  The Clerk of the Court shall DISMISS Heritage Home Health, LLC, and Angela Young and Defendants in this case pursuant to the Parties' stipulation (Dkt. 58). Heritage Home Health's Motion (Dkt. 29) is DISMISSED as MOOT. In like manner, Morris's Motion for joinder re: causation (Dkt. 33) is DISMISSED as MOOT;

2.  Defendants Elizabeth Fehringer, Elizabeth Loosli, and Carole Jeffries are also dismissed from this case based upon Plaintiffs' concession (Dkt. 40, at 18).

3.  Plaintiff Darce Bishop is DISMISSED for lack of standing;

4.  Morris's Motion for Summary Judgment (Dkt. 28) is GRANTED in PART and DENIED in PART as outlined above. The Motion is granted as to Plaintiffs' federal claim. The Motion is denied in that the Court will not exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. Those claims are DISMISSED WITHOUT PREJUDICE;

5.  The State Defendants' Motion for Summary Judgment (Dkt. 30) is GRANTED.

6.  The parties' Motions for Leave to File Excess Pages (Dkts. 39, 46) are GRANTED.

7.  The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: November 18, 2021

David C. Nye
Chief U.S. District Court Judge